NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HOWARD JOHNSON INTERNATIONAL, INC., a Delaware Corporation, | : : : | |
| Plaintiff, | : : | Civil Action No. 06-5137 (JAG) |
| v. | : : : | OPINION |
| GOODLAND INNS, INC., a Kansas Corporation; and BRUCE E. HILL, an individual; and WAYNE L. HILL, an individual, | : : : : : : | |
| Defendants. | : : | |

**GREENAWAY, JR., U.S.D.J.**

   This matter comes before this Court on the motion of Plaintiff Howard Johnson International, Inc. ("Plaintiff" or "HJI") for default judgment against Defendant Goodland Inns, Inc. ("Defendant" or "Goodland Inns"), pursuant to Federal Rule of Civil Procedure 55(b). Plaintiff seeks damages for an alleged breach and premature termination of a license agreement between Plaintiff and Defendant. Plaintiff also seeks treble damages, pursuant to the Lanham Act, 15 U.S.C. §§ 1111 - 1129, for the alleged unauthorized use of Plaintiff's trademarks.

### I. FACTS

   HJI does not own or operate any hotels; instead, it operates a guest lodging facility franchise system. (Aff. of K. Noel Hedges, Senior Manager of Compliance - Franchise Administration for HJI, Oct. 3, 2007 ("Hedges Aff.") ¶ 3.) HJI's franchise system is "composed

of various trade names and service marks," as well as "certain standards and centralized support functions." (Id. at ¶ 3.) Pursuant to individual franchise or license agreements, HJI allows its franchisees to operate guest lodging facilities that utilize the Howard Johnson marks. (Id. at ¶ 4.) On February 12, 1997, HJI and Goodland Inns entered into a license agreement (the "License Agreement") for the operation of a 79-room guest lodging facility, located at 2218 Commerce Road, Goodland, Kansas (the "Facility"). (Id. at ¶ 5.) The License Agreement was amended four times. (Id. at ¶¶ 6-9) (stating that the License Agreement amendments occurred on or about May 28, 1998, March 8, 1999, March 21, 2000, and August 6, 2001.)

  The License Agreement obligated Goodland Inns to operate, inter alia, a Howard Johnson guest lodging facility for twenty years; "make renovations in order to bring the Facility into compliance with 'System Standards,' 'Approved Plans,' and/or a 'Punch List'"; and "make certain periodic payments to HJI for royalties, service assessments, taxes, interest, reservation system user fees, annual conference fees, and other fees (collectively, 'Recurring Fees')." (Id. at ¶¶ 10-11, 14; see also Compl. Ex. A at 1-5, 8-10.) The License Agreement also provides that HJI may terminate the Agreement, after providing notice to Goodland Inns, "for various reasons, including Goodland Inns' (a) failure to pay any amount due HJI under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after written notice from HJI specifying one or more defaults under the License Agreement, and/or (c) receipt of two or more notices of default under the License Agreement in any one-year period, whether or not the defaults were cured." (Hedges Aff. at ¶ 17; see also Compl. Ex. A at 12-13.)

  HJI alleges that Goodland Inns did not operate the Facility in accordance with the "System

Standards," and that the Facility failed quality assurance inspections on five separate occasions.[1] (Id. at ¶¶ 22-27.)  As a result of these failures, HJI terminated the License Agreement on April 1, 2003, and advised Goodland Inns that, among other things, "it was to immediately discontinue the use of all trade names, service marks, signs, and other forms of advertising, and other indicia of operation as a Howard Johnson system facility . . . ."  (Compl. at ¶ 45.)   HJI alleges that Goodland Inns continued to use the Howard Johnson marks without authorization, notwithstanding the License Agreement's termination.  (Id. at ¶ 51.)  HJI requests damages, including prejudgment interest and attorneys' fees and costs.

## II. JURISDICTION

Before entering a default judgment against a party that has not filed responsive pleadings, "the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."  Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir. 1986).

This Court has subject matter jurisdiction over the present case, pursuant to 28 U.S.C. § 1332, because Plaintiff and Defendant are citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.  Specifically, HJI is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Parsippany, New Jersey.  (Compl. at ¶ 1.)  Defendant Goodland Inns, Inc. is a corporation organized and existing under the laws of the State of Kansas, with its principal place of business in Kansas.[2]  (Id. at ¶ 2.)

---

[1] The failed inspections occurred on December 19, 2001; July 15, 2002; October 14, 2002; December 24, 2002; and March 18, 2003.  (Compl. at ¶¶ 39-44.)

[2] This Court also has subject matter jurisdiction as a result of HJI's Lanham Act claim, pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. § 1121.  See 28 U.S.C. § 1331 ("The

3

To ascertain whether or not a court has personal jurisdiction, a federal court sitting in diversity must conduct a two-step analysis. First, the court must look to the forum state's long-arm statute to determine if personal jurisdiction is permitted over the defendant. Second, the court must determine whether the exercise of jurisdiction violates Due Process under the Fourteenth Amendment. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998); Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co., 75 F.3d 147, 150 (3d Cir. 1996).

In this forum, the inquiry is collapsed into a single step because New Jersey's long arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, as defined under the Constitution of the United States. As such, federal law defines the parameters of this Court's in personam jurisdiction. IMO Indus., Inc., 155 F.3d at 259. The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235 (1958)). The plaintiff has the burden of proving that the defendant purposefully availed itself of the forum state. Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J. 1997).

Personal jurisdiction, however, is a right that can be waived by the parties. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). A forum selection

---

district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."); 15 U.S.C. § 1121(a) ("The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this Act, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties.").

clause in a contract is one way to effectuate this waiver. Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 315 (1963).

This Court has personal jurisdiction over Goodland Inns by virtue of the forum selection clause in the License Agreement, which includes a waiver of objections to personal jurisdiction. Specifically, Section 17.4 of the License Agreement states that Goodland Inns "consent[s] and waive[s] [its] objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between [HJI] and [Goodland Inns]." (Compl. Ex. A at 19.)

"[I]n a federal forum, the enforceability of a forum selection clause is determined by a generally applicable federal law." Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 201 (3d Cir. 1983), cert. denied, 464 U.S. 938 (1983), overruled on other grounds; Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989). This Court must look to federal law in determining whether to enforce the forum selection clause in the License Agreement.

The Supreme Court of the United States has held that "[forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). This rule reflects the principle that courts should enforce freely negotiated contract terms, and give effect to the legitimate expectations of the parties. M/S Bremen, 407 U.S. at 12.

Expanding on this ruling, the Third Circuit has adopted the following three step test:

a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate strong public policy of the forum,

5

> or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

Coastal Steel, 709 F.2d at 202 (quoting M/S Bremen, 407 U.S. at 12-13). A court may refuse to enforce a forum selection clause if any of the factors have been demonstrated. Id.

In this case, Goodland Inns consented to personal jurisdiction in New Jersey by signing, and agreeing to, the terms of the License Agreement. Because none of the M/S Bremen factors are present here, this Court concludes that the forum selection clause is valid. This Court has personal jurisdiction over Goodland Inns.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) governs the entry of default judgment. The rule states:

> In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
>    (A) conduct an accounting;
>    (B) determine the amount of damages;
>    (C) establish the truth of any allegation by evidence; or
>    (D) investigate any other matter.

FED. R. CIV. P. 55(b)(2). "The Federal Rules of Civil Procedure commit the entry of a default judgment against a party to the sound discretion of the trial court." F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 11 (8th Cir. 1977).

"Default establishes the defaulting party's liability for the well-pleaded allegations of the

complaint." United States v. Gant, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (citing Brock v. Unique Racquetball & Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir. 1986)). Default does not establish liability for the amount of damages claimed by the plaintiff. Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation."). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

The district court has considerable latitude in determining the amount of damages. Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993). The district court may conduct a hearing to determine the damage amount. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." Pope v. United States, 323 U.S. 1, 12 (1944).

## IV. ANALYSIS

### A.    Default Judgment

Defendant Goodland Inns has failed to appear, or otherwise plead, in response to the Complaint Plaintiff filed on October 26, 2006, and personally served on Goodland Inns by a

process server on November 7, 2006.[3]  (See Executed Summons for Goodland Inns, Nov. 7, 2006 (Docket Entry No. 3).)  Goodland Inns also failed to respond to the instant motion, filed on October 3, 2007, and served via United Parcel Service overnight delivery.  Therefore, this Court finds that default judgment is appropriate, pursuant to Federal Rule of Civil Procedure 55(b)(2), on all counts of the Complaint.

**B.     Damages**

Plaintiff requests the following damages:  $158,000.00 in liquidated damages; $129,035.52 in interest on the liquidated damages; $7,149.81 in unpaid Recurring Fees; $5,934.72 in interest on the Recurring Fees; additional prejudgment interest on the liquidated damages and Recurring Fees for the period between November 12, 2007 and the date of this order; and $9,708.45 in attorneys' fees and costs.  Plaintiff also seeks $71,336.76 in treble damages, pursuant to the Lanham Act, 15 U.S.C. § 1117(a).

Section 12.1 of the License Agreement provides for liquidated damages of no "less than the product of $2,000.00 multiplied by the number of guest rooms in the Facility."  (Compl. Ex. A at 14.)  The calculation of such damages is $2000 * 79 guest rooms = $158,000.  As such, HJI's liquidated damages request complies with the terms of the License Agreement.

Section 7.3 of the License Agreement requires Goodland Inns to pay interest at the rate of

---

[3] To the extent that Defendant Bruce Hill, the License Agreement's Guarantor, intended for his November 28, 2006 letter to be construed as an answer on behalf of Goodland Inns, such answer is legally impermissible.  Third Circuit law is unequivocal – corporations must be represented by counsel in all legal proceedings.  See Simbraw v. United States, 367 F.2d 373, 374 (3d Cir. 1966) ("[A] corporation can do no act except through its agents and [] such agents representing the corporation in Court must be attorneys at law who have been admitted to practice, are officers of the Court and subject to its control.") (citations omitted).  This Court cannot, and will not, construe Defendant Bruce Hill's letter as an answer by Defendant Goodland Inns.

1.5% per month on "any past due amount payable to [HJI]." (Id. at 9.) As a result, this Court finds that Goodland Inns must pay interest on the liquidated damages, for the period between May 1, 2003[4] and November 12, 2007, in the amount of $129,035.52. Goodland Inns must pay an additional $15,466.68 for the interest accrued from November 12, 2007 to the date of this Order, May 27, 2008.

Section 7 of the License Agreement outlines the various Recurring Fees Goodland Inns is obligated to pay. (Id. at 9-10.) These fees include royalties, reservation system fees, and taxes. HJI seeks damages of $7,149.81 in Recurring Fees, exclusive of interest, and separate from damages sought pursuant to the Lanham Act. (Hedges Aff. at ¶¶ 35, 37.) The outstanding Recurring Fees are itemized in a statement attached to K. Noel Hedges' Affidavit. (Hedges Aff. Ex. B.) This Court finds that Goodland Inns must pay such fees, plus interest at the rate of 1.5% per month, pursuant to Section 7.3 of the License Agreement. Goodland Inns owes $5,934.72 in interest for the period between April 1, 2003[5] and November 12, 2007, and $699.90 for the period between November 12, 2007 and the date of this Order, May 27, 2008.

Section 17.4 of the License Agreement states that the "non-prevailing party will pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." (Compl. Ex. A at 17.) However, Plaintiff has not provided sufficient documentation to assure this Court as to the amount of

---

[4] The License Agreement was terminated on April 1, 2003; therefore, the unpaid liquidated damages became past due on May 1, 2003. (See Compl. Ex. A at 14) ("If [HJI] terminate[s] the License under Section 11.2 . . . , [Goodland Inns] will pay us within 30 days following the date of termination, as Liquidated Damages, an amount equal to . . . . ").

[5] Recurring Fees are due "ten days after the month in which they accrue, without billing or demand." (Compl. Ex. A at 9.)

attorneys' fees and costs.  See L. CIV. R. 53.2 (requiring an affidavit setting forth, inter alia: "(1) the nature of the services rendered, . . . (2) a record of the dates of services rendered[,] (3) a description of the services rendered on each of such dates by each person of that firm . . . (4) the time spent in the rendering of each of such services[,] and (5) the normal billing rate for each of said persons for the type of work performed.").  This Court will reserve judgment on this amount.

Finally, Section 35 of the Lanham Act states that

> [w]hen a violation of any right of the registrant of a mark registered in the Patent and Trademark Office . . . shall have been established in any civil action arising under this Act, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction. . . . In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.

15 U.S.C. § 1117(a).  While this Court may, in its discretion, award damages pursuant to the Lanham Act, Plaintiff has failed to provide sufficient documentation for this Court to calculate the amount of damages owed for the period of infringement, i.e., approximately April 1, 2003 through December 13, 2006.  Plaintiff correctly notes that without discovery it is difficult to determine the Facility's gross room revenue, or the amount of Recurring Fees due to Plaintiff, during the infringement period; however, Plaintiff fails to provide this Court with documentation to support its calculation of the average gross revenue and Recurring Fees Goodland Inns paid over the term of the License Agreement.  (Hedges Aff. at ¶¶ 39-40.)  As such, this Court reserves judgment on the amount of damages due, pursuant to the Lanham Act.

## V.  CONCLUSION

For the reasons stated above, the motion of Plaintiff Howard Johnson International, Inc., for default judgment against Defendant Goodland Inns, Inc. is granted.


Date: May 27, 2008

                                         S/Joseph A. Greenaway, Jr.
                                         JOSEPH A. GREENAWAY, JR., U.S.D.J.